UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22776-ALTMAN/Reid

**A.G.**,

    *Plaintiff*,

v.

**RIVERSIDE CHRISTIAN MINISTRIES, INC.**, *et al.*,

    *Defendants.*

_____/

## ORDER

The Plaintiff has filed a Motion to Remand [ECF No. 21]—which, after careful review, we now **GRANT**.[1]

### THE FACTS

Between September 9, 2020, and February 5, 2021, the Plaintiff, A.G., was an inmate on home confinement, serving out the tail-end of a 51-month sentence. Complaint [ECF No. 1-4] ¶ 17.[2] During this period of home confinement, A.G. was held in custody "at her residence by direction of and pursuant to a contract or agreement with Riverside Christian Ministries, Inc. and the Attorney General of the United States." *Id.* ¶ 18. Riverside Christian is a non-profit corporation that provides

---

[1] The Motion to Remand is ripe for resolution. On August 2, 2023, we granted Riverside Christian Ministries, Inc.'s and David McSherry, Sr.'s Motion for Leave to File Separate Responses. *See* Paperless Order [ECF No. 9]. The Plaintiff filed her Motion to Remand on August 21, 2023. *See* [ECF No. 21]. On September 5, 2023, Correctional Management & Communications Group, LLC, filed a timely Response to the Motion to Remand (the "Response") [ECF No. 26]. The next day, McSherry and Riverside Christian filed an untimely Response to the Motion to Remand (the "Joint Response") [ECF No. 29]. Still, because the Joint Response was filed only one day after the deadline—and so as not to prejudice these Defendants—we'll consider (and then reject) the arguments these Defendants advance in their Joint Response. The Plaintiff replied to the Response and the Joint Response on September 12, 2023. *See* [ECF Nos. 31, 32].

[2] On February 5, 2021, A.G. began her term of federal supervised release. *See* Complaint ¶ 17.

"supervisory and monitoring services to the Federal Bureau of Prisons pursuant to a contract between [Riverside Christian] and the Federal Bureau of Prisons and the Attorney General of the United States." *Id.* ¶ 16. "[T]he terms of the home confinement agreement signed by the Plaintiff specifically stated that she legally remained in the custody of the Federal Bureau of Prisons and the Attorney General[.]" *Id.* ¶ 19.

During a home visit on December 28, 2020, Benito Montes de Oca Cruz—an agent of Riverside Christian assigned to perform "site visits to the Plaintiff's residence to determine her compliance with the terms of her home confinement"—engaged in sexual contact with the Plaintiff. *Id.* ¶¶ 21–22. Afterwards, the Plaintiff provided a semen sample to law enforcement—along with "two short videos . . . [one] show[ing] Cruz naked on top of the naked Plaintiff on her bed, and the other show[ing] the naked Plaintiff approaching Cruz, who was lying naked on the bed." *Id.* ¶ 24, 26. The semen sample "was submitted for serological and DNA examination along with DNA swabs taken from Cruz pursuant to a federal search warrant" and was found through laboratory testing to be "16 octillion times more likely" to include Cruz's DNA (over that of an unknown person). *Id.* ¶ 25. On January 12, 2023, Cruz pled guilty in federal court to a felony charge of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(4). *Id.* ¶ 27. Cruz is not a defendant in this case.

On March 31, 2023, the Plaintiff filed a Complaint in state court against *our* Defendants—Riverside Christian; McSherry; and Correctional Management & Communications Group, LLC ("CMCG")—asserting three counts of negligence. *See generally* Complaint. Count I alleges that Riverside Christian negligently hired, retained, supervised, and trained Cruz (the perpetrator). *Id.* ¶¶ 28–34. Count II advances similar negligence claims against McSherry, who was the Chief Operating Officer of Riverside Christian. *Id.* ¶¶ 6, 35–44. Finally, Count III asserts a negligence claim against CMCG, a company hired by Riverside Christian to consult on "processes for continuous improvement." *Id.* ¶ 46. As relief, the Plaintiff seeks $50,000 in compensatory damages from each

Defendant. *Id.* ¶¶ 34, 44, 52.

On July 26, 2023, Riverside Christian and McSherry removed this case to federal court under the provisions of 28 U.S.C. §§ 1331, 1367, 1441, and 1446. *See* Notice of Removal [ECF No. 1] at 1.[3] In doing so, Riverside Christian and McSherry argued that we could exercise federal-question jurisdiction over this case because the "Plaintiff's Complaint names three defendants and three . . . negligence-based counts [but] [e]ach count is based on alleged violations of the federal Prison Rape Elimination Act ('PREA')[.]" *Id.* ¶¶ 4–5. The parties are not completely diverse, *see* Complaint ¶ 13, and (in any event) the Defendants never invoke our diversity jurisdiction, *see generally* Notice of Removal.

On August 21, 2023, A.G. filed a Motion to Remand, insisting that her Complaint "sounds only in State law and does not raise a federal question." Motion to Remand at 4. In its Response, CMCG contends that the Plaintiff's claims raise federal questions because the "allegations of negligence in Count III against CMCG are based exclusively on CMCG's duties as a PREA auditor." Response at 1. And, in their Joint Response, McSherry and Riverside Christian maintain that all three negligence claims "arise under" the PREA—and that, accordingly, all three counts belong in federal court.[4] Joint Response at 2–3.

---

[3] At the time of removal, CMCG had not yet been served. *See* Notice of Removal at 2.

[4] In 2003, Congress enacted the PREA, now located at 34 U.S.C. §§ 30301, *et. seq.* The PREA was "the first federal law to address the sexual abuse of prisoners." *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015). The basic purpose of the PREA was "to 'establish a zero-tolerance standard' for sexual assault in United States prisons." *DeJesus v. Lewis*, 14 F.4th 1182, 1193 n.8 (11th Cir. 2021) (citing 34 U.S.C. §§ 30302(1), 30309(9)–(11)). When enacted, the PREA "directed the Attorney General to 'publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape.' 34 U.S.C. § 30307(a)(1). [This] rule established standards for investigating and responding to allegations of sexual abuse committed against prisoners[.]" *Ibid.*

3

## THE LAW

A federal court should remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

"Federal courts exercise limited subject matter jurisdiction, empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (cleaned up). "Congress granted federal courts jurisdiction over diversity actions and cases raising a federal question. If jurisdiction is based on either of these, the pleader must affirmatively allege facts demonstrating the existence of jurisdiction and include 'a short and plain statement of the grounds upon which the court's jurisdiction depends.'" *Ibid.* (quoting FED. R. CIV. P. 8(a)).

"Under the federal question jurisdiction statute, 28 U.S.C. § 1331, a district court has subject matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001) (quoting 28 U.S.C. § 1331). "Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally determined by the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Ibid.* (quoting

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). In other words, "[f]ederal question jurisdiction exists only when the 'well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (quoting *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

Although courts continue to apply the well-pleaded-complaint rule, the Supreme Court has said that the delicate balance of federalism concerns has "kept [it] from stating a 'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). As such, the Supreme Court has refused to "treat[ ] 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Ibid.*

In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

## ANALYSIS

This case must be remanded back to state court for two reasons. *First*, we don't agree with the Defendants that, under the well-pleaded-complaint rule, the Plaintiff's right to relief *necessarily* depends on the resolution of a substantial question of federal law. *See Baltin*, 128 F.3d at 1472. For one thing, the Plaintiff—as master of her own Complaint—has deliberately pled only state-law claims. For another, state-law issues predominate in each of the Plaintiff's three causes of action. In Count I, for

5

instance, the Plaintiff alleges (among other theories of negligence) that Riverside Christian breached its legal duties by "negligently hiring Cruz when it knew or should have known that he was unfit and unqualified for employment," "failing to perform an appropriate background check and investigation prior to hiring him and while retaining him," "failing to properly supervise and train Cruz," and "failing to take further action, such as investigation, discharge, or reassignment, once it became aware of Cruz's misconduct during employment[.]" Complaint ¶ 32. As should be obvious, these are simple, state-law negligence allegations that, together, comprise a straightforward, state-law negligence claim. Indeed, Count I doesn't mention the PREA even once—nor does it hint at any other federal statute or cause of action. *See id.* ¶¶ 28–34. Because Count I is rooted predominantly (if not exclusively) in state law—and since it requires no exposition on any federal statute or case—we lack federal-question jurisdiction over Count I.

Count II (against McSherry) is nearly identical to Count I—except that it adds two new allegations: McSherry (Count II says) was the PREA Coordinator at Riverside Christian (no substantial federal question there), and McSherry failed to "comply with the requirements of PREA." *Id.* ¶¶ 36, 42. These are the only references to the PREA in Count II. *See id.* ¶¶ 35–44. Count II, in other words, is a state-law negligence claim that identifies *seventeen different* ways in which McSherry was negligent—only one of which was his failure to comply with a federal law. To predominate means to "exert controlling power or influence: exercise superiority (as in strength or authority)" or "to hold advantage in numbers or quantity." *Predominate*, MERRIAM-WEBSTER UNABRIDGED, https://unabridged.merriam-webster.com/unabridged/predominate (last visited Oct. 2, 2023). Where the claim is indisputably a state-law claim—and where that state-law claim relies on seventeen theories of negligence, only one of which involves federal law—we cannot say that federal questions "predominate." *See Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir. 1994) ("Plaintiffs' inclusion as elements of their state law claims defendant's knowledge of federal securities law and his failure to

6

comply with certain aspects of that law does not automatically transform what are in all other respects state law claims into federal claims . . . . The fact that part of the state statutory scheme requires some analysis of federal law . . . is insufficient to invoke federal jurisdiction."); *Becker v. T.I. Holdings, Inc.*, 2010 WL 3075704, at *3 (M.D. Fla. Aug. 5, 2010) (Covington, J.) (finding remand appropriate where "state law claims predominate the reference to the ADA [and] [n]one of the three causes of action in the complaint are derived from federal law. Rather, all three are state law claims that merely mention the alleged violations of the ADA as support for their contention that [d]efendants are violating the laws"); *Girard v. CitiMortgage, Inc.*, 2013 WL 5873297, at *2 (N.D. Tex. Nov. 1, 2013) (adopting the magistrate judge's recommendation of dismissal because the plaintiff's "single passing reference" to a federal statute among multiple state- and common-law claims did not constitute a cause of action and was not "sufficient to support the exercise of federal question jurisdiction").

Nor can we say that McSherry's alleged violation of the PREA raises "substantial" questions of federal law. A "substantial" question of federal law is "importan[t]" to "the federal system *as a whole*." *Gunn v. Minton*, 568 U.S. 251, 260 (2013) (emphasis added); *see also Bollea v. Clem*, 937 F. Supp. 2d 1344, 1353 (M.D. Fla. 2013) (Whittemore, J.) ("Issues that will 'change the real-world result' for future cases and future litigants are substantial." (quoting *Gunn*, 568 U.S. at 260)). Whether McSherry fell short of the PREA's standards—relatively immaterial, as we've seen, even in the context of Count II—isn't "importan[t]" to "the federal system as a whole," *Gunn*, 568 U.S. at 260, and doesn't "'change the real-world result' for future cases and future litigants," *Bollea*, 937 F. Supp. 2d at 1353 (quoting *Gunn*, 568 U.S. at 260). Under the well-pleaded-complaint rule, in sum, A.G.'s right to relief under Counts I and II depends, *not* on substantial questions of federal law, *but* on the resolution of basic questions of negligence under Florida law.

Count III is a closer call. Here, the Plaintiff alleges that CMCG negligently audited Riverside Christian's compliance with the PREA, failed to adopt an appropriate system for ensuring compliance

7

with the PREA, and failed to take reasonable measures to ensure compliance with the PREA. Complaint ¶ 50. Still, we don't think the federal questions embedded within A.G.'s state-law negligence claim against CMCG are "substantial" enough to warrant federal intervention. Where federal issues arise out of a state-law claim, "federal question jurisdiction is still defeated [if] the federal issues referenced in the [complaint] are not 'substantial.'" *Bollea*, 937 F. Supp. 2d at 1353. As we've said, the substantiality inquiry looks to the "importance of the issue to the federal system *as a whole*." *Gunn*, 568 U.S. at 260 (emphasis added); *see also Bollea*, 937 F. Supp. 2d at 1353 ("Issues that will 'change the real-world result' for future cases and future litigants are substantial." (quoting *Gunn*, 568 U.S. at 260)).

According to the Supreme Court, the two paradigmatic examples of "substantial" federal questions that arise out of a state-law claim are (1) the federal Government's "direct interest in the availability of a federal forum to vindicate its own administrative action" and (2) the "constitutional validity of an act of Congress which is directly drawn in question." *Gunn*, 568 U.S. at 260–61 (first citing *Grable*, 545 U.S. at 315; and then citing *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 201 (1921)). These issues of federal law qualified as "substantial" because they "could be settled once and for all and thereafter would govern numerous" cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006).

Neither of these paradigmatic examples even remotely applies here. Since the federal government has nothing to do with this case, the question of CMCG's negligence—or its failure to comply with the PREA—*obviously* doesn't affect the government's interest in vindicating its own non-existent administrative action. Nor does the outcome of our negligence case depend on the constitutional validity of an act of Congress. *Gunn*, 568 U.S. at 260–61. The Defendants, in fact, have *never* drawn the PREA's constitutionality into question—directly or otherwise. Nothing about Count III, in short, would "settle[ ] once and for all" a substantial federal question in a way that "thereafter would govern numerous" cases, *McVeigh*, 547 U.S. at 700, or "change the real-world result" for future

8

cases and litigants, *Bollea*, 937 F. Supp. 2d at 1353 (cleaned up). And we don't think that allowing Florida's courts to resolve Count III will "undermine the development of a uniform body of [federal] law." *Id.* at 261 (cleaned up). On the contrary, Florida's state courts are the proper forum for the resolution of A.G.'s state-law claims. Count III's PREA allegations are thus insufficient to justify federal intervention. *Cf. Hill*, 13 F.3d at 1550 ("Plaintiffs' inclusion as elements of their state law claims defendant's knowledge of federal securities law and his failure to comply with certain aspects of that law does not automatically transform what are in all other respects state law claims into federal claims . . . . The fact that part of the state statutory scheme requires some analysis of federal law . . . is insufficient to invoke federal jurisdiction.").[5]

The *second* (and more significant) reason to remand this case is that the PREA doesn't create a private cause of action. So, even if we agreed with the Defendants that A.G.'s state-law negligence counts "arise under" federal law, we'd still remand this case. Although the Eleventh Circuit hasn't yet opined on whether the PREA creates a private right of action,[6] many district courts in this Circuit (and others) have held that it does not. *See, e.g.*, *Diamond v. Allen*, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) ("PREA does not create a private cause of action for allegations of prison rape . . . or otherwise confer any extra rights outside of the normal prison grievance system[.]" (cleaned up)); *Gilley v. Wysinger*, 2021 WL 3910325, at *9 (N.D. Ala. July 28, 2021) ("[T]he PREA does not establish a private cause of action."); *Gibson v. Kent*, 2016 WL 7384646, at *2 (N.D. Fla. Nov. 18, 2016) (Timothy, Mag. J.), *report and recommendation adopted*, 2016 WL 7379002 (N.D. Fla. Dec. 20, 2016) (Rodgers, C.J.)

---

[5] Resisting this conclusion, CMCG points us to a case from the Southern District of Ohio, where "the district court found that claims raised under the PREA and 42 U.S.C. § 1983 were properly removed to federal court." Response at 3 (citing *Singleton v. Warren Cnty. Sheriff's Off.*, 2022 WL 866280, at *2 (S.D. Ohio Mar. 23, 2022)). In that case, however, the plaintiff deliberately brought his claims under the PREA, *see Singleton*, 2022 WL 866280, at *1, whereas (as we've highlighted) A.G. has purposely asserted only state-law claims. *Singleton* is, therefore, neither here nor there.

[6] *See Cox v. Nobles*, 15 F.4th 1350, 1361 (11th Cir. 2021) ("[W]e need not—and do not—decide today whether the PREA offers a standalone case of action.").

9

("Nowhere in the PREA is there language to suggest that part of its purpose was to create a private cause of action or a federal right which could be enforced in a Section 1983 action. Thus, it has been uniformly held that the PREA does not create a private right of action whereby an inmate . . . may seek relief.").[7]

And every federal circuit court to have passed on this question has likewise held that the PREA *doesn't* establish a private cause of action. *See McRae v. Myers*, 2023 WL 2423590, at *3 (7th Cir. Mar. 9, 2023) ("Though PREA is a federal law, it does not create a private cause of action."); *Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015) ("Insofar as Krieg argues that his rights under the [PREA] were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape . . . . Krieg has cited no case in support of his position; therefore, any claim raised under the PREA is properly dismissed as frivolous."). We now join this growing consensus in holding that the PREA *doesn't* create a private cause of action.

And that holding, in turn, easily resolves the Plaintiff's Motion to Remand. In the words of one learned treatise, "in removed cases in which a state cause of action turns on the meaning of a federal statutory standard, removal would not be proper if the federal statute did not provide a private claim for its violation." 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3722.1 (Rev. 4th ed.); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986) ("[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" (quoting 28 U.S.C. § 1331)). Applying this basic principle, district

---

[7] *See also Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue . . . . The statute does not grant prisoners any specific rights.").

10

courts faced (as we are) with federal-law issues that are embedded within a state-law claim have uniformly refused to retain jurisdiction where (as here) the federal law in question creates no private cause of action. Indeed, in a strikingly similar case, the District of New Jersey held that "there is no private cause of action under PREA, and thus the statute is not a valid basis for removal jurisdiction." *Voltz v. Somerset Cnty. Jail*, 2021 WL 1986459, at *3 (D.N.J. May 18, 2021); *see also Peterson v. Volunteers of Am. of Greater New Orleans, Inc.*, 2017 WL 695398, at *2 (E.D. La. Feb. 22, 2017) (remanding because "the PREA does not establish a private cause of action for allegations of prison rape" and "a claim does not arise under the law of the United States pursuant to section 1331 if the relief sought is based entirely upon a state cause of action in which regulations established by federal statute are used merely as further evidence of the right to recover under state law").

Even in cases involving *other* federal statutes that *likewise* don't offer private causes of action, district courts have regularly applied this principle and remanded for lack of federal-question jurisdiction. *See, e.g., Valentin Munoz v. Island Fin. Corp.*, 364 F. Supp. 2d 131, 136 (D.P.R. 2005) ("HIPAA cannot provide an appropriate basis for removal to this [c]ourt because federal jurisdiction cannot be based on a federal statute that does not provide a private cause of action."); *City of Treasure Island v. City of St. Petersburg*, 2010 WL 98981, at *2 (M.D. Fla. Jan. 6, 2010) (Covington, J.) (finding that the "Plaintiff's complaint does not arise under federal law" because "[t]here is no private right of action under the Clean Water Act applicable here, and the operative complaint does not implicate a substantial question of federal law"); *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1017 (6th Cir. 2018) (vacating district court's judgment with instructions to remand where the federal statute at issue did "not create a cause of action, and the federal issue nested inside [p]laintiffs' state law cause of action [was] not substantial"). Because it affords no federal cause of action, the PREA isn't a proper basis for the exercise of our removal jurisdiction.

In the face of all this, McSherry and Riverside Christian advance one final argument—that A.G.'s negligence claims are subject to removal based on the doctrine of "complete preemption" under either the PREA or the Prison Litigation Reform Act ("PLRA"). Joint Response at 5. We disagree.

"Complete preemption occurs in the rare instance that Congress so 'completely pre-empt[s] a particular area that any civil complaint . . . is necessarily federal in character.'" *Pruitt v. Hansen & Adkins, Inc.*, 2023 WL 4494192, at *2 (M.D. Ala. July 12, 2023) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). "Complete preemption is jurisdictional in nature and focuses on whether Congress intended to make a plaintiff's cause of action federal and removable even though the complaint only pleads state-law claims." *Ibid.*

There is, however, no evidence—and the Defendants don't point us to any—that the Plaintiff's ordinary negligence claims are completely preempted by *any* federal statute. A quick look at the PREA reveals no words, together or in combination, that could plausibly be read as preempting a plaintiff's state-law claims—and the Defendants wisely never suggest otherwise. "[I]n the absence of explicit direction from Congress, the Supreme Court has indicated its reluctance to find the extraordinary preemptive power necessary for complete preemption." *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1353 (11th Cir. 2003).

As for the PLRA, the Defendants make much of its admonition that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But, as we've explained, the Plaintiff hasn't brought an action under § 1983 or any other federal law, so the PLRA's exhaustion requirements simply do not apply here. *See McDaniel v. Meisner*, 617 F. App'x 553, 556 n.3 (7th Cir. 2015) ("[T]he exhaustion requirements of the Prison Litigation Reform Act do not apply to state-law claims."); *Berger*

12

*v. Godwin*, 2022 WL 797401, at *12 (M.D. Fla. Mar. 16, 2022) (Howard, J.) ("The PLRA's exhaustion requirement applies only to an action 'brought with respect to prison conditions under section 1983 of this title, or any other Federal law.' 42 U.S.C. § 1997e(a). Thus, Berger's failure to exhaust administrative remedies is not dispositive of his state law claims."); *Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As Nunez's cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.").

In any event, "the PLRA exhaustion requirement is not jurisdictional," *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), so it has nothing to do with the doctrine of complete preemption, which is a "narrowly drawn means of assessing federal removal jurisdiction," *Blab T.V. of Mobile Inc. v. Comcast Cable Comms., Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). Even if the Defendants are right, then, that A.G. had some obligation to exhaust her administrative remedies—and that she failed to do so—the proper recourse is for them to raise that defense in state court once this case has been remanded. But her failure to exhaust isn't a reason to exercise federal jurisdiction over an otherwise-state-law case.

Under the well-pleaded-complaint rule, in sum, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc.*, 482 U.S. at 392. That's exactly what A.G. has done here.

***

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Plaintiff's Motion to Remand [ECF No. 10] is **GRANTED**. The case is **REMANDED** to the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida. The Clerk of Court is directed to **CLOSE** this case. All pending deadlines and hearings are **TERMINATED**, and any pending motions, including the Defendants' Motion to Dismiss [ECF No. 24], are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on October 2, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record